IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

FILED

MAR 25 2011

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| DIANA ASGEIRSSON, et al.<br>    Plaintiffs, | § § § | |
| v. | § § | P-09-CV-59 |
| GREG ABBOTT, Texas Attorney<br>General, and THE STATE OF TEXAS,<br>    Defendants. | § § § § § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On November 23, 2010, this case was tried before this Court.  The following findings are now issued in accordance with Federal Rule of Civil Procedure 52(a).

## I. INTRODUCTION

### A. *Rangra v. Brown* Procedural History

1.      At the outset, Plaintiffs and Defendants stipulate that the substantive legal issues of this case are the same as those tried before this Court in *Rangra v. Brown* ("*Rangra I*"), No. P-05-CV-075, 2006 WL 3327634 (W.D. Tex. Nov. 7, 2006), *rev'd*, 566 F.3d 515 (5th Cir. 2009), *vacated by* 576 F.3d 531 (5th Cir. 2009) (granting rehearing en banc), *appeal dismissed as moot*, 584 F.3d 206 (5th Cir. 2009) (en banc).

2.      On February 17, 2005, the Brewster County Grand Jury indicted Alpine, Texas city council members Avinash Rangra and Katie Elms-Lawrence for violating the criminal provisions of the Texas Open Meetings Act ("TOMA").  *Id.* at *2-3.  The indictment was based upon an exchange of e-mails between Mr. Rangra, Ms. Elms-Lawrence, and two other Alpine City Council Members that allegedly constituted a closed meeting under TOMA.  *Id.*   Mr. Rangra and Ms. Elms-Lawrence

denied any wrongdoing and sought the state district court's construction of TOMA under the First Amendment. *Id.*

3.       In May of 2005, before the state district court could construe TOMA in the criminal case, District Attorney Frank Brown dismissed the indictment against Mr. Rangra and Ms. Elms-Lawrence without prejudice.  Subsequently, Mr. Rangra and Anna Monclova, another member of the Alpine City Council involved in the exchange of e-mails, sued Texas Attorney General Greg Abbott, *inter alia*, in the United States District Court for the Western District of Texas, arguing the criminal provisions of  TOMA violated their free speech rights.[1]  *Id.* at *1.  Ms. Elms-Lawrence, though a party to the e-mails at issue in the case, was not a plaintiff in *Rangra I.  Id.*

4.       On November 7, 2006, this Court concluded that TOMA did not violate Plaintiffs Rangra and Monclova's First Amendment rights because open meetings were required pursuant to their official duties on the Alpine City Council. *Id.* at *8.  In addition, this Court concluded that TOMA was not overbroad or vague. *Id.* at *9.  On April 24, 2009, a Fifth Circuit Panel reversed and remanded, reasoning that strict scrutiny analysis applies to TOMA's criminal provisions.  *Rangra v. Brown ("Rangra II")*, 566 F.3d 515, 526-27 (5th Cir. 2009), *vacated by* 576 F.3d 531 (5th Cir. 2009) (granting rehearing en banc), *appeal dismissed as moot*, 584 F.3d 206 (5th Cir. 2009) (en banc).

5.       On July 27, 2009, the Fifth Circuit granted a rehearing en banc.  *Rangra v. Brown ("Rangra III")*, 576 F.3d 531, 532 (5th Cir. 2009), *appeal dismissed as moot*, 584 F.3d 206 (5th Cir. 2009). As a result, the Fifth Circuit panel decision of April 24, 2009, was vacated. 5th Cir. R. 41.3 ("Unless

---

[1] *Rangra I* Plaintiffs Avinash Rangra and Anna Monclova do not return as plaintiffs in this case.

otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate."); *see, e.g., United States v. Seale*, 577 F.3d 566, 570 (5th Cir. 2009) (per curiam) ("The grant of the petition for rehearing en banc had the effect of vacating the unanimous panel opinion and rendering it non-precedential.").[2]

6.      When it issued its opinion on September 10, 2009, the Fifth Circuit, sitting en banc, dismissed the appeal for mootness and, therefore, never decided whether strict scrutiny applies to TOMA. *Rangra v. Brown* ("*Rangra IV*"), 584 F.3d 206, 207 (5th Cir. 2009).  The en banc decision instead found the appeal was moot because Mr. Rangra and Ms. Monclova were no longer members of the Alpine City Council by the time the case was set for oral argument. *Rangra IV*, 584 F.3d at 209 (Dennis, J., dissenting); *see Rangra II*, 566 F.3d at 518 n.2.  On May 19, 2009, at the end of his term, Mr. Rangra left office. *Rangra IV*, 584 F.3d at 209 (Dennis, J., dissenting).  Ms. Monclova's term ended in May of 2006. *Rangra I*, 2006 WL 3327634 at *2.

7.      This Court, therefore, is not bound by the Fifth Circuit Panel's previous conclusion that strict scrutiny applies to TOMA.  Because the Fifth Circuit sitting en banc dismissed *Rangra* for mootness, this Court reviews de novo whether strict scrutiny should be applied to TOMA.

**B. The Present Challenge to TOMA**

8.      Once again, this Court confronts the question of whether the criminal provisions of TOMA,

---

[2] *See also United States v. Ellis*, 419 F.3d 1189, 1192 (11th Cir. 2005) ("[V]acated opinions are officially gone. They have no legal effect whatever. They are void. [They have no] remaining force and cannot be considered to express the view of this Court." (quoting *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002))) (internal quotation marks omitted).

specifically Section 551.144, violate the First and Fourteenth Amendments.[3] "A core purpose of TOMA is to enable the public to have access to the actual decision-making process of its governmental bodies." *Willmann v. City of San Antonio*, 123 S.W.3d 469, 473 (Tex. App. – San Antonio 2003, pet. denied). Under TOMA, a quorum of a governmental body must hold their meetings open to the public when they discuss "public business or public policy over which the governmental body has supervision or control." Tex. Gov't Code Ann. §§ 551.001(2) & (4), 551.002 (Vernon 2004 & Supp. 2010). If a closed meeting occurs and members of a governmental body knowingly call, aid, or participate in that closed meeting, they face fines up to $500 and a maximum confinement of six months in a county jail, or both. Tex. Gov't Code Ann. § 551.144(a)-(b) (Vernon 2004).

9.      Initially, Plaintiffs were Texas city council members and the Texas cities of Alpine, Pflugerville, Rockport, and Wichita Falls. On February 2, 2010, Defendants filed their Motion to Dismiss Cities as Plaintiffs, pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the cities of Alpine, Pflugerville, Rockport, and Wichita Falls lack standing to bring this suit because (1) they are creatures of the state, and as such, cannot sue the state; (2) they have no rights under the First Amendment; and (3) they are not subject to the provisions they propose to challenge. On July 28, 2010, this Court granted Defendants' Motion to Dismiss the Cities as Plaintiffs. (Order Grant at 1, Doc. 31). Thus, the only remaining Plaintiffs are the Texas city council members.

10.     On July 12, 2010, Plaintiffs and Defendants filed cross motions for summary judgment

---

[3] This Court finds that Plaintiffs only bring a facial challenge to the constitutionality of TOMA because they seek declaratory relief, injunctive relief, and were neither charged nor indicted for violations of the Act. *See* discussion *infra* Part III.C.

pursuant to Federal Rule of Civil Procedure 56.  At the final pretrial conference on September 20, 2010, this Court decided to carry along the parties' cross motions for summary judgment to trial. On November 23, 2010, this Court held a bench trial.

11.     Plaintiffs bring suit pursuant to 42 U.S.C. § 1983, challenging the constitutionality of the criminal provisions of TOMA, Section 551.144.  Plaintiffs seek declaratory and injunctive relief from this Court that the criminal provisions of TOMA may not be enforced, pursuant to 28 U.S.C. §§ 2201, 2202 and Federal Rule of Civil Procedure 57.[4]

12.     Plaintiffs argue that a declaratory judgment and injunction are appropriate for the following reasons: (1) TOMA is unconstitutionally vague because Texas officials do not know what is proscribed; (2) TOMA is overbroad because it prohibits a substantial amount of constitutionally-protected conduct; (3) TOMA violates the First Amendment as applied because it causes Plaintiffs to suppress their speech in fear of criminal prosecution; and (4) TOMA is subject to strict scrutiny because it is content-based and discriminates against speakers based upon their identity.  In response, Defendants argue the following: (1) TOMA is neither overbroad nor vague because it does not restrict a substantial amount of activity; (2) Plaintiffs have failed to present an as-applied challenge to TOMA; and (3) TOMA does not require strict scrutiny because it is a disclosure law.

---

[4] Plaintiffs only challenge the constitutionality of Section 551.144.  Section 551.143 also contains criminal penalties – including fines and confinement – for attempts by governmental bodies to knowingly circumvent TOMA through "meeting in numbers less than a quorum."  Tex. Gov't Code Ann. § 551.143(a)-(b) (Vernon 2004).  But Plaintiffs do not challenge the constitutionality of Section 551.143.  (Pls.' Resp. to Defs.' Brief at 20, Doc. 64) ("[P]laintiffs respectfully request that the Court strike down Texas Government Code § 551.144 as unconstitutional and render judgment for Plaintiffs.").

## II. FINDINGS OF FACT

1.    Plaintiffs are city council members in the State of Texas.  Diana Asgeirsson, Angie Bermudez, James Fitzgerald, and Johanna Nelson are members of the Alpine City Council. Jacques DuBose is a member of the Boerne City Council.  Jim Ginnings is a former member of the Wichita Falls City Council, and he is currently president of the 4B Corporation in Wichita Falls, Texas.[5] Victor Gonzalez is a member of the Pflugerville City Council.  Russell C. Jones is a member of the Sugar Land City Council.  Mel LeBlanc is a member of the Arlington City Council.  Lorne Liechty is a member of the Heath City Council.  Todd Pearson is mayor of Rockport, Texas and a member of its city council. Arthur Reyna is a member of the Leon Valley City Council.  Charles Whitecotton is a member of the Whitesboro City Council.  Henry Wilson is a member of the Hurst City Council. Kevin Wilson is a member of the Bellmead City Council.

2.    Defendant Greg Abbott, the Texas Attorney General, has the statutory authority to prosecute violations of TOMA.

3.    No Plaintiff has been indicted or charged for violating TOMA.

4.    Every state in the United States of America has enacted an open meetings law.

5.    Each Plaintiff has undergone TOMA training pursuant to Texas Government Code Section 551.005.

---

[5] This Court takes judicial notice that testimony revealed the 4B Corporation in Wichita Falls, Texas, is a governmental body under TOMA. Tex. Gov't Code Ann. § 551.001(3) (Vernon Supp. 2010).

### III. CONCLUSIONS OF LAW

#### A. Relevant Closed Meeting Provisions Under TOMA

1.    Unless excepted, a governmental body is required to hold its meetings open to the public. Tex. Gov't Code Ann. § 551.002; *see* §§ 551.071-089 (Supp. 2010) (Subchapter D. Exceptions to Requirement that Meetings be Open).

2.    A member of a governmental body violates TOMA and commits a misdemeanor offense if a closed meeting occurs and the member knowingly:

> (1) calls or aids in calling or organizing the closed meeting, whether it is a special or called closed meeting;
>
> (2) closes or aids in closing the meeting to the public, if it is a regular meeting; or
>
> (3) participates in the closed meeting, whether it is a regular, special, or called meeting.

Tex. Gov't Code Ann. § 551.144(a)-(b) (Vernon 2004).  The offense is punishable by a fine between $100 and $500, by a confinement in the county jail between one and six months, or both fine and confinement. *Id.*

3.    According to TOMA § 551.001:

> (1) "Closed meeting" means a meeting to which the public does not have access.
>
> (2) "Deliberation" means a verbal exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental body or any public business.

(3) "Governmental body" means:

(A) a board, commission, department, committee, or agency within the executive or legislative branch of state government that is directed by one or more elected or appointed members;

(B) a county commissioners court in the state;

(C) a municipal governing body in the state;

(D) a deliberative body that has rulemaking or quasi-judicial power and that is classified as a department, agency, or political subdivision of a county or municipality;

(E) a school district board of trustees;

(F) a county board of school trustees;

(G) a county board of education;

(H) the governing board of a special district created by law;

(I) a local workforce development board created under Section 2308.253;

(J) a nonprofit corporation that is eligible to receive funds under the federal community services block grant program and that is authorized by this state to serve a geographic area of the state; and

(K) a nonprofit corporation organized under Chapter 67, Water Code, that provides a water supply or wastewater service, or both, and is exempt from ad valorem taxation under Section 11.30, Tax Code.

(4) "Meeting" means:

(A) a deliberation between a quorum of a governmental body, or between a

quorum of a governmental body and another person, during which public

business or public policy over which the governmental body has supervision

or control is discussed or considered or during which the governmental body

takes formal action; or

(B) except as otherwise provided by this subdivision, a gathering:

> (i) that is conducted by the governmental body or for which the
> governmental body is responsible;

> (ii) at which a quorum of members of the governmental body is
> present;

> (iii) that has been called by the governmental body; and

> (iv) at which the members receive information from, give information
> to, ask questions of, or receive questions from any third person,
> including an employee of the governmental body, about the public
> business or public policy over which the governmental body has
> supervision or control.

The term does not include the gathering of a quorum of a governmental body at a

social function unrelated to the public business that is conducted by the body, or the

attendance by a quorum of a governmental body at a regional, state, or national

convention or workshop, ceremonial event, or press conference, if formal action is

not taken and any discussion of public business is incidental to the social function,

convention, workshop, ceremonial event, or press conference.

The term includes a session of a governmental body.

(5) "Open" means open to the public.

(6) "Quorum" means a majority of a governmental body, unless defined differently

by applicable law or rule or the charter of the governmental body.

Tex. Gov't Code Ann. § 551.001(1)-(6) (Vernon Supp. 2010).

## B. Jurisdiction and Venue

4.      This Court has original jurisdiction over "all civil actions arising under the Constitution,

laws, or treaties of the United States." 28 U.S.C. § 1331.

5.      This Court also has original jurisdiction over any civil action "to redress the deprivation,

under color of any State law," of any right "secured by the Constitution of the United States." 28

U.S.C. § 1343(a)(3).

6.      An action arising under federal law may be brought in "a judicial district where any

defendant resides, if all defendants reside in the same State" or "in a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b).

7.      Venue is proper in this Court because "a substantial part of the events . . . giving rise to

the claim" – the alleged suppression of First Amendment rights of Plaintiffs Diana Asgeirsson,

Angie Bermudez, James Fitzgerald, and Johanna Nelson – occurred in the Pecos Division of the

Western District of Texas. 28 U.S.C. § 1391(b).

## C. Standing

8.      Plaintiffs argue that they bring facial and as-applied challenges to the constitutionality of

TOMA because Plaintiffs suppress their speech to avoid TOMA's continual threat of prosecution.

In response, Defendants argue that Plaintiffs bring only a facial challenge. As the Supreme Court

has held, "the label is not what matters." *Doe v. Reed*, 130 S. Ct. 2811, 2817 (2010); *see Hang On,*

*Inc. v. City of Arlington*, 65 F.3d 1248, 1253 (5th Cir. 1995); *see also Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006) (Excluding third-party standing, the general rule is "a party cannot challenge a statute as-applied unless the statute has been applied to him."). Rather, this Court will focus on the remedy Plaintiffs seek – declaratory and injunctive relief, which "reach[es] beyond the particular circumstances of these [P]laintiffs." *Doe*, 130 S. Ct. at 2817.

9.      Plaintiffs have not been indicted or charged pursuant to TOMA's Section 551.144 criminal provisions.  Instead, Plaintiffs request that this Court declare the criminal provisions of TOMA unconstitutional and that this Court issue an injunction barring the enforcement of the statute. Plaintiffs, then, bring only a facial challenge.  Thus, this Court can only find TOMA facially unconstitutional if it prohibits "a substantial amount of protected speech." *Hersh v. United States ex. rel. Mukasey*, 553 F.3d 743, 762 (5th Cir. 2008).  Because this Court finds that TOMA is neither overbroad nor vague, this Court begins its TOMA analysis with Plaintiffs' two constitutional challenges to TOMA.  In Part III.D.(1), this Court determines whether TOMA is content-based. Next, in Part III.D.(2), this Court discusses whether TOMA unconstitutionally restricts speech based upon the speaker's identity. In Part III.E.(1), this Court analyzes TOMA under intermediate scrutiny. In Part III.E.(2), this Court, in the alternative, also analyzes TOMA under strict scrutiny.  In Part III.F, this Court discusses Plaintiffs' claims that TOMA is overbroad.  And finally, in Part III.G, this Court analyzes Plaintiffs' claims that TOMA is vague.

## D. Constitutional Challenges

### (1). Content-Based Time, Place, and Manner Regulations

10.     The First Amendment prohibits Congress from making any law abridging the freedom of speech. U.S. Const. amend. I. The First Amendment is applied to the states through the Fourteenth

F:\MD\Chambers\Judge_Junell\JUNELL CLERKS\SBaker\Civil\Alpine v. St of TX, P-09-cv-59\Findings of Fact and Conclusions of Law - FINAL.wpdMarch 25, 2011 (1:17pm)

Page 11 of 37

Amendment: "The freedom of speech . . . which [is] secured by the First Amendment against abridgment by the United States, [is] among the fundamental personal rights and liberties which are secured to all persons by the Fourteenth Amendment against abridgment by a State." *Burson v. Freeman*, 504 U.S. 191, 196 (1992) (plurality opinion) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940)).

11.     Plaintiffs' challenge to TOMA's criminal provisions implicates two competing rights:  the city council members' right to freedom of speech versus the Texas citizen's right to open government.  This Court finds that a Texas citizen has – at the minimum – a significant right, if not a fundamental right, to open government because "a major purpose of [the First] Amendment [is] to protect the free discussion of government affairs." *Burson*, 504 U.S. at 196 (plurality opinion) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)) (internal quotation marks omitted).  "For speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. La.*, 379 U.S. 64, 74-75 (1964).  Because the First Amendment protects free discussion of government affairs, and this free discussion is suppressed when city council members close their meetings to the public, this Court must examine the right to open government and, in turn, open meetings.

12.     Content-based speech prohibitions receive strict scrutiny from courts determining a statute's constitutionality. *Republican Party of Minn. v. White*, 536 U.S. 765, 774-775 (2002).  However, content-neutral statutes that minimally affect speech rights are examined under intermediate scrutiny. *Serv. Emp. Int'l Union, Local 5 v. City of Hous.*, 595 F.3d 588, 596 (5th Cir. 2010).  Plaintiffs argue that TOMA is not a valid time, place, and manner regulation of their free speech rights because it is content-based.  In response, Defendants argue that TOMA is a disclosure law that is content-

F:\MD\Chambers\Judge_Junell\JUNELL CLERKS\SBaker\Civil\Alpine v. St of TX, P-09-cv-59\Findings of Fact and Conclusions of Law - FINAL.wpdMarch 25, 2011 (1:17pm)

Page 12 of 37

neutral because it requires disclosure of speech, not suppression.

13.     The difficult task this Court faces, then, is determining the proper balance between the city council members' constitutional right to freedom of speech and the Texas citizen's right to open meetings. "[Texas] citizens are entitled to more than a result. They are entitled not only to know what government decides but to observe how and why every decision is reached. The explicit command of the statute is for openness at every stage of the deliberations."   *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990).  Also, City council members certainly do not lose their right to political expression once they attain public office. *Bond v. Floyd*, 385 U.S. 116, 135 (1966) ("[F]or while the State has an interest in requiring its legislators to swear to a belief in constitutional processes of government, surely the oath gives it no interest in limiting its legislators' capacity to discuss their views of local or national policy.").

14.     This interest in ensuring that all U.S. citizens have access to their government has inspired each of the fifty states to enact open meetings laws. *St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Sch.*, 332 N.W.2d 1, 5 (Minn. 1983) (en banc).  No court, including any Texas court, has ever concluded that an open-meetings law is subject to strict scrutiny.  *See, e.g., Hays Cnty. Water Planning P'ship v. Hays Cnty., Tex.* 41 S.W.3d 174, 181-82 (Tex. App. – Austin 2001, pet. denied) ("[W]e see no restriction of the right of free speech by the necessity of a public official's compliance with the Open Meetings Act when the official seeks to exercise that right at a meeting of the public body of which he is a member."); *Sandoval v. Bd. of Regents of the Univ.*, 67 P.3d 902, 907 (Nev. 2003) (per curiam) (concluding that Nevada's statute did not violate the First Amendment because public officials "are free to speak on any topic of their choosing, provided they place the topic on the agenda"); *Cole v. State*, 673 P.2d 345, 350 (Colo. 1983) (per curiam); *St. Cloud Newspapers*, 332

N.W.2d at 7-8; *State ex rel. Murray v. Palmgren*, 646 P.2d 1091, 1099-1100 (Kan. 1982); *People ex rel. Difanis v. Barr*, 414 N.E.2d 731, 739 (Ill. 1980).

15.     The Supreme Court has reasoned that "[t]he principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Hill v. Colorado*, 530 U.S. 703, 719 (2000) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (internal quotation marks omitted).  Also, a content-neutral restriction must not "create[] distinctions between favored speech and disfavored speech" or create a "substantial risk of eliminating certain ideas or viewpoints from the public forum." *Serv. Emp. Int'l Union, Local 5 v. City of Hous.*, 595 F.3d 588, 596 (5th Cir. 2010) (quoting *Horton v. City of Hous.*, 179 F.3d 188, 193 (5th Cir. 1999).  The Supreme Court has also held that "permissible time, place, or manner restrictions may not be based upon either the content or subject matter of speech." *Consol. Edison Co. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 536 (1980).  Today, this Court does not stray from these axioms.  This Court agrees with Defendants and applies an intermediate scrutiny analysis because this Court finds that TOMA does not unconstitutionally ban speech.  Rather, this Court finds TOMA to be a proper time, place, and manner regulation.  *See, e.g., City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46 (1986).

16.     Justice Brandeis wrote "[p]ublicity is justly commended as a remedy for social and industrial diseases.  Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." L. Brandeis, Other People's Money 62 (National Home Library Foundation ed. 1933).  In the spirit of Justice Brandeis's advice, this Court finds the criminal provisions of TOMA content-neutral because: (1) TOMA is viewpoint neutral – the regulation does not prohibit certain speech because

of the ideas expressed; (2) TOMA does not prevent speech from reaching the "Marketplace of Ideas;" (3) TOMA can be justified by a content-neutral purpose that is unrelated to a desire to suppress speech – it combats the undesirable secondary effects of the speech in question; and finally, (4) Defendants aver, and this Court agrees, that TOMA requires disclosure of speech and does not suppress speech.

### (a). <u>Viewpoint Discrimination and the Marketplace of Ideas</u>

17.     This Court begins its analysis of TOMA by looking to viewpoint discrimination.  When analyzing viewpoint discrimination, a court must decide whether the government is regulating speech because it disapproves of the ideas expressed. *Serv. Emp. Int'l Union, Local 5 v. City of Hous.*, 595 F.3d 588, 596 (5th Cir. 2010); *see Citizens United v. FEC*, 130 S. Ct. 876, 898 (2010) ("Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints.").   Also, content-based discrimination "raises the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace." *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 188 (2007) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 387 (1992)).

18.     This Court finds that TOMA is not viewpoint-based because it is not based upon a desire to suppress speech.  This Court further finds that TOMA is not motivated by any disapproval of the ideas that governmental bodies express. *See, e.g., R.A.V.*, 505 U.S. at 382.  TOMA is not based upon political party bias, allowing speech by one group but not another.  Also, TOMA does not disfavor certain topics of discussion.  Rather, TOMA was created to provide government transparency. *See, e.g., Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990).

19.     Finally, this Court finds that speech is not driven from the marketplace of ideas by TOMA's

requirement that public officials disclose matters of public concern to their constituents.  Open meetings enable public discussion and discourage government secrecy and fraud.  By requiring open meetings, TOMA ensures that ideas or viewpoints are injected into the marketplace.  Plaintiffs, and Texas public officials, in general, are not in danger of having their ideas or viewpoints driven from the marketplace by TOMA.  Instead, their election to public office allows them a bullhorn for their ideas.  Plaintiffs are merely asked to limit their group discussions about these ideas to forums in which the public may participate.

### (b). Secondary Effects

20.     In addition to conducting analysis regarding the marketplace of ideas and potential viewpoint discrimination, the Supreme Court has also highlighted the need to examine speech-restricting laws in terms of their secondary effects.  Recently, the Fifth Circuit held that "[a] regulatory scheme [requiring] the government to examine the content of the message that is conveyed is content-based regardless of its motivating purpose." *Serv. Emp. Int'l Union, Local 5 v. City of Hous.*, 595 F.3d 588, 596 (5th Cir. 2010) (quoting *Reno v. ACLU*, 521 U.S. 844, 874 (1997)) (internal quotation marks omitted).  A line of Supreme Court cases distinguishes this reasoning, finding that some laws are constitutional despite facially being content-based restrictions upon speech.  This Court finds the Supreme Court line of cases instructive.

21.     Beginning with *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), the Supreme Court has treated a law that appears to be content-based on its face as content-neutral when the regulation is justified by a content-neutral purpose.  *Renton*, 475 U.S. at 48-49; *see* Erwin Chemerinsky, Constitutional Law: Principles and Policies 936-39 (3d. 2006).  In *Renton*, a Washington zoning ordinance prohibited adult movie theaters from locating within 1,000 feet of any

single- or multiple-family dwelling, residential zone, school, park, or church. *Renton*, 475 U.S. at

43. "The [*Renton*] ordinance was clearly content-based in its very terms: It applied only to theaters

that showed films with sexually explicit content."   Erwin Chemerinsky, Constitutional Law:

Principles and Policies 937 (3d. 2006). Nonetheless, the *Renton* zoning regulation could be treated

as content-neutral because it was unrelated to the suppression of free speech. *Renton*, 475 U.S. at

48. The zoning law was designed to control the "secondary effects" of adult movie theaters, such

as preventing crime and maintaining property values. *Id.* "The ordinance does not contravene the

fundamental principle that underlies our concern about content-based speech regulations: that

government may not grant the use of a forum to people whose views it finds acceptable, but deny

use to those wishing to express less favored or more controversial views." *Id.* at 48-49 (quoting

*Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95-96 (1972)) (internal quotation marks omitted).

22.     In subsequent cases, the Supreme Court has upheld its reasoning in *Renton*. For example,

in *Boos v. Barry*, 485 U.S. 312 (1988), the Supreme Court held that a District of Columbia code,

which restricted political speech that criticized foreign governments near their embassies, was

content-based because the government could only justify the ordinance by reference to the content

of the speech instead of the speech's secondary effects. *Boos*, 485 U.S. at 321-22 (plurality opinion).

In distinguishing *Boos* from *Renton*, Justice O'Connor wrote:

> The [display] clause is justified only by reference to the content of speech.
> Respondents and the United States do not point to the "secondary effects" of picket
> signs in front of embassies. They do not point to congestion, to interference with
> ingress or egress, to visual clutter, or to the need to protect the security of embassies.
> Rather, they rely on the need to protect the dignity of foreign diplomatic personnel
> by shielding them from speech that is critical of their governments. This justification
> focuses only on the content of the speech and the direct impact that speech has on its
> listeners. The emotive impact of speech on its audience is not a "secondary effect."
> Because the display clause regulates speech due to its potential primary impact, we

conclude it must be considered content-based.

*Id.* at 321 (plurality opinion).

23.    More recently, in *Hill v. Colorado*, 530 U.S. 703 (2000), the Supreme Court upheld a law

that prohibited "knowingly approach[ing] within eight feet of another person, without that person's

consent, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral

protest, education, or counseling." *Hill*, 530 U.S. at 707 (quoting Colo. Rev. Stat. § 18-9-122(3)

(1999)). Like *Renton*, the Colorado law appears to be content-based because it restricts speech based

upon "protest, education, or counseling." *Id.*; *see* Erwin Chemerinsky, Constitutional Law:

Principles and Policies 938 (3d. 2006). But the Colorado restriction was classified as content-neutral

because it was "justified without reference to the content of the regulated speech." *Hill*, 530 U.S.

at 720. "[T]he State's interests in protecting access and privacy, and providing the police with clear

guidelines, are unrelated to the content of the demonstrators' speech." *Id.* at 720-21.

24.    Justice Brennan warned that *Renton*'s secondary effects analysis "offer[s] countless excuses

for content-based suppression of political speech." *Boos v. Barry*, 485 U.S. 312, 334-335 (1988)

(Brennan, J., concurring) ("The *Renton* analysis . . . creates a possible avenue for governmental

censorship whenever censors can concoct "secondary" rationalizations for regulating the content of

political speech."); *see also* Marcy Strauss, From Witness to Riches: The Constitutionality of

Restricting Witness Speech, 38 Ariz. L. Rev. 291, 317 (1996) ( "In sum, the secondary effects

doctrine permits an end run around the First Amendment: the government can always point to some

neutral, nonspeech justification for its actions.").

25.    Taking these warnings into consideration, this Court, nonetheless, finds no such censorship

at play in TOMA and finds that the secondary effects analysis is appropriate. Plaintiffs argue that

TOMA is content-based because the Act regulates speech based upon its content. *See, e.g.*, *United States v. Playboy Entm't Group*, 529 U.S. 803, 813 (2000). This Court disagrees. Under TOMA, the content of speech is necessarily examined because a prosecutor, to bring charges, must review the content of speech within a closed meeting to determine whether a governmental body has discussed "public business or public policy over which the governmental body has supervision or control" in violation of the Act. Tex. Gov't Code Ann. §§ 551.001(2) & (4), 551.002 (Vernon 2004 & Supp. 2010). The Supreme Court, though, has "never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct." *Hill*, 530 U.S. at 721 (2000). Rather, a subject matter restriction is "constitutionally repugnant" because it prohibits "public discussion of an entire topic," while allowing discussion on all other topics. *Id.* at 722-23 (quoting *Carey v. Brown*, 447 U.S. 455, 462 n.6 (1980)). TOMA does not prohibit discussion of an entire topic of speech. Rather, TOMA promotes discussion of public business because a quorum of a governmental body must hold its meetings open to the public.[6]

26.    Also, TOMA is content-neutral because the Act was designed to control the secondary effects of closed meetings. Defendants argue that the three compelling interests of TOMA are: (1) open meetings provide transparency in a government's decision-making process; (2) open meetings discourage fraud and corruption in government; and (3) open meetings foster trust in government. *See Doe v. Reed*, 130 S. Ct. 2811, 2819 (2010) (reasoning that a state's interest in rooting out fraud is particularly strong because it breeds mistrust in government); *Citizens United v. FEC*, 130 S. Ct.

---

[6] *See infra* Part III.D.(1).(c).(iii). for a further discussion of how TOMA merely requires disclosure of speech instead of suppression.

876, 916 (2010) (concluding that transparency enables citizens to make informed decisions about their government). This Court agrees. The logical corollary of these compelling interests in TOMA are the three following secondary effects of closed meetings: (1) closed meetings prevent transparency; (2) closed meetings encourage fraud and corruption; and (3) closed meetings foster mistrust in government. Defendants' interest in avoiding the secondary effects of closed meetings are the true motivations behind the criminal provisions of TOMA. It is nonsensical to say a government would attempt to suppress speech by requiring disclosure of that speech at an open meeting. To the contrary, TOMA is not about censorship but rather about the disclosure of the speech in question. If TOMA's true aim was to suppress the content of a governmental body's speech, then there would be no disclosure requirement. TOMA is not directed at the content of the public official's speech or the effect that speech might have on the general public. TOMA is concerned with giving the public more access to their government. Thus, this Court finds that TOMA does not suppress speech.

**(c). Disclosure Laws**

27.     The recent Supreme Court decisions of *Citizens United v. FEC* and *Doe v. Reed* distinguish outright bans of speech from disclosure requirements. Both parties point to these decisions in support of their arguments. Plaintiffs argue that the holdings in *Citizens United* and *Doe* reinforce the idea that TOMA suppresses speech and elected officials should have the same free speech rights as everyone else. Defendants, on the other hand, argue that the decisions in *Citizens* and *Doe* support the constitutionality of TOMA because open government disclosure rules are fundamentally different from outright speech bans. Defendants also assert that a disclosure requirement is content-neutral as long as a speaker is only required to disclose his or her speech. This Court agrees with

Defendants and begins its discussion with *Citizens United v. FEC*.

**(i). *Citizens United v. FEC***

28.    To avoid the civil and criminal penalties that would result from violating 2 U.S.C. § 441b's

ban on corporate-funded independent expenditures, Citizens United, a nonprofit corporation, brought

an action in a United States district court, seeking declaratory and injunctive relief against the

Federal Election Commission. *Citizens United*, 130 S. Ct. at 888. According to Section 441b,

unions and corporations were prohibited from using their treasury funds to pay for speech advocating

the defeat or election of a candidate. *Id.* at 887-88. Also, Citizens United challenged portions of the

Bipartisan Campaign and Reform Act of 2002 ("BCRA") that required disclosure of who created

a political advertisement, who funded the advertisement, and to which political election the

communication was directed. *Id.* at 914. Citizens United argued that Section 441b's ban on

corporate spending and BCRA's disclaimer and disclosure requirements were unconstitutional

restrictions of speech. *Id.* at 888. The Supreme Court held that Section 441b's ban on corporate

spending is unconstitutional for two reasons: (1) the Government cannot suppress political speech

on the basis of the speaker's corporate identity, and (2) there is no sufficient governmental interest

that justifies limits on the political speech of nonprofit or for-profit corporations. *Id.* at 913. But the

Supreme Court upheld the BCRA's disclaimer and disclosure requirements. *Id.* at 914. The

Supreme Court reasoned that disclosure requirements "may burden the ability to speak," but do not

prevent individuals from speaking. *Id.*

**(ii). *Doe v. Reed***

29.    In *Doe*, Protect Marriage Washington, a political action committee, submitted a petition

containing over 137,000 signatures in an effort to place Senate Bill 5688 on the ballot for an

upcoming referendum. *Doe v. Reed*, 130 S. Ct. 2811, 2816 (2010). Senate Bill 5688 expanded the

rights of same-sex domestic partners. *Id.* According to the Washington Constitution, citizens can

challenge state laws by referendum if four percent of voters sign a petition to place a referendum on

the ballot. *Id.* at 2815. This petition must include the names and addresses of the signers. *Id.* An

individual and four entities, which included Washington Coalition for Open Government and

Washington Families Standing Together, sought access to the names and addresses of the individuals

who signed this petition through the state's public record act. *Id.* at 2816. Washington's Public

Records Act ("WPRA") provides for disclosure of all public records, including referendum petitions.

*Id.* Two other organizations, WhoSigned.org and KnowThyNeighbor.org, issued a press release

stating that they planned to post the names of the petition signers online in a searchable format. *Id.*

The referendum petition sponsor and some petition signers filed a complaint seeking to prevent the

secretary of state from publicly releasing the names and contact information of the signers through

the WPRA. *Id.* The Supreme Court held that WPRA as applied to the petitioners did not violate the

First Amendment because it "may burden the ability to speak, but it did not "prevent anyone from

speaking." *Id.* at 2821 (quoting *Citizens*, 130 S. Ct. at 914).

**(iii). Analysis of *Citizens United* and *Doe***

30.      TOMA is similar to the disclosure laws in *Citizens United* and *Doe*. Even though those cases

were decided in the contexts of election spending and public record acts, TOMA, like the disclosure

laws in *Citizens United* and *Doe*, does not prevent speech from occurring. Rather, TOMA requires

that speech about public business be disclosed. Even if a majority of members of a governmental

body hold a closed meeting that initially violates TOMA, a subsequent open meeting in which the

same issues of public concern are reconsidered corrects any wrongdoing. *See, e.g., Burks v.*

*Yarbrough*, 157 S.W.3d 876, 883 (Tex. App. – Houston [14th Dist.] 2005, no pet.) (concluding that

a county commissioners court, which may have held a meeting in violation of TOMA, corrected any

impropriety by subsequently reconsidering the same public issues at an open meeting). Thus, at no

point are members of governmental bodies, city council members or otherwise, prevented from

speaking. Public officials are allowed to talk about any topic they please; they are only required to

disclose what occurred at closed meetings at subsequent open meetings. Public officials can be

charged under TOMA's Section 551.144 criminal provisions for not disclosing what occurred at

closed meetings. Public officials do not violate TOMA's criminal provisions for merely speaking.

TOMA is not an outright ban on political speech like the statute in *Citizens United*. Rather, TOMA

requires that public officials disclose their speech to their constituents.

31.      In sum, this Court finds that TOMA is content-neutral because it is not viewpoint based.

This Court also finds that TOMA does not prevent certain ideas from reaching the marketplace of

ideas. This Court further finds that TOMA is justified by a permissible content-neutral purpose.

Finally, this Court finds that TOMA requires disclosure, not suppression, of speech.

## (2). Restrictions on Speech Based Upon Identity

32.      Plaintiffs also argue that TOMA unconstitutionally restricts speech based upon the speaker's

identity. Plaintiffs assert that TOMA's restrictions violate the First Amendment by treating public

officials differently than the average citizen. This Court disagrees.

33.      Citizens do not lose their free speech rights when they enter public office. *Citizens United*,

130 S. Ct. at 904 ("[T]he concept that government may restrict the speech of some elements of our

society in order to enhance the relative voice of others is wholly foreign to the First Amendment.")

(quoting *Buckley v. Valeo*, 424 U.S. 1, at 48-49 (1976)). The Supreme Court, nonetheless, has

concluded that, in a narrow class of cases, speaker restrictions based upon "an interest in allowing governmental entities to perform their functions" do not run afoul of the First Amendment. *Citizens United v. FEC*, 130 S. Ct. at 899 (citing *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 683 (1986) (protecting the "function of public school education"); *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977) (furthering "the legitimate penological objectives of the corrections system" (internal quotation marks omitted)); *Parker v. Levy*, 417 U.S. 733, 759 (1974) (ensuring "the capacity of the Government to discharge its [military] responsibilities" (internal quotation marks omitted)); *Civil Serv. Comm'n v. Letter Carriers*, 413 U.S. 548, 557 (1973) ( "[F]ederal service should depend upon meritorious performance rather than political service")). This Court finds such a situation has occurred here. TOMA's speech disclosure requirement prevents governmental bodies from holding closed meetings. This requirement is necessary to provide the public with government transparency, an essential governmental function.   This Court, therefore, finds that TOMA's content-neutral disclosure requirements on a member of a governmental body, such as a city council member, do not violate the First Amendment.

34.     Lastly, it is far from clear whether TOMA actually restricts speech based upon a person's identity at all. The Texas Attorney General has concluded that private citizens can violate TOMA when they assist governmental bodies in violating the act.   Tex. Att'y Gen. Op. JC-0307, 2000 WL 1731174, at *7 (Nov. 20, 2000). A non-governmental body member violates TOMA when "he or she, acting with intent, aids or assists a member or members of a [governmental body] who knowingly act to violate [TOMA]." *Id.*

### E. Level of Scrutiny

### (1). Intermediate Scrutiny Analysis

35.     Because TOMA is found to be a content-neutral law, this Court applies intermediate

scrutiny.[7] *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994).  To pass intermediate

scrutiny, content-neutral laws must (1) "leave open ample alternative channels of communication"

and (2) be "narrowly tailored to serve a significant government interest."  *Serv. Emp. Int'l Union,

Local 5 v. City of Hous.*, 595 F.3d 588, 596 (5th Cir. 2010).  "In the context of intermediate scrutiny,

narrow tailoring does not require that the least restrictive means be used."  *Id.*  Rather, "[a]s long as

the restriction promotes a substantial governmental interest that would be achieved less effectively

without the restriction, it is sufficiently narrowly tailored."  *Id.*

36.     As previously mentioned, this Court finds that TOMA leaves open all channels of

communication for council members to be heard.  City council members, or any other members of

a governmental body, that hold a closed meeting in violation of TOMA can correct their violation

with a subsequent open meeting.  *See, e.g.*, *Burks v. Yarbrough*, 157 S.W.3d 876, 883 (Tex. App.

– Houston [14th Dist.] 2005, no pet.).  Thus, a public official who wishes to communicate his or her

ideas is unlimited in the ways he or she can do so.  Also, TOMA restrictions do not prevent members

of governmental bodies from discussing public business with newspaper, television, or radio outlets.

Members of governmental bodies can also choose to discuss public business with friends or family,

or even discuss public business one-on-one with their fellow city council members as long as they

---

[7] Defendants argue that this Court should apply the "exacting scrutiny" standard to
TOMA because it is a disclosure law.  *See Citizens United v. FEC*, 130 S. Ct. 876, 914 (2010).
This Court, however, applies the intermediate scrutiny test to TOMA because it is a content-
neutral law that requires disclosure.

do not knowingly conspire to circumvent TOMA.[8]  This Court, therefore, finds that TOMA leaves open ample alternative channels of communication.

37.     This Court finds persuasive Defendants' description of three compelling interests that TOMA meets.  First, Defendants argue that TOMA provides transparency in a government's decision-making process.  *See Citizens United* , 130 S. Ct. 916 ("[T]ransparency enables the electorate to make informed decisions and give proper weight to different speakers and messages.").  Second, Defendants assert that TOMA prevents fraud and corruption in government.  *Doe*, 130 S. Ct. at 2819 ("The State's interest is particularly strong with respect to efforts to root out fraud, which not only may produce fraudulent outcomes, but has a systemic effect as well: It drives honest citizens out of the democratic process and breeds distrust of our government." (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam))).  Third, Defendants argue that open meetings foster trust in government.  *Id.*  This Court agrees with Defendants and finds these are not merely "significant" interests but, rather, compelling interests.  *See Serv. Emp. Int'l Union*, 595 F.3d at 596.  As the Minnesota Supreme Court found, these interests are at the heart of a free, ethical governance.  As that Court stated:

> Although there may be an effect on the free expression of ideas caused by the requirement that public meetings be open to the public, the legislature is justified in prescribing such openness in order to protect the compelling state interest of prohibiting the taking of actions at secret meetings where the public cannot be fully informed about a decision or it cannot detect improper influences.

*St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Sch*, 332 N.W.2d 1, 7 (Minn. 1983); *see also Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("[The discussion of government affairs] of course includes

---

[8] *See infra* Part III.G for a discussion of how meeting in numbers less than a quorum can be a violation of TOMA.

discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes."); *Garrison v. La.*, 379 U.S. 64, 75 (1964) ("The First and Fourteenth Amendments embody our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." (quoting *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964))) (internal quotation marks omitted).  The transparency that TOMA supplies, "enables the electorate to make informed decisions and give proper weight to different speakers and messages." *See Citizens United* 130 S. Ct. 876, 916 (2010); *see also Doe v. Reed*, 130 S. Ct. 2811, 2819-20 (2010) (Court finding a strong interest in promoting transparency and accountability in the electoral process); *Doe,* 130 S. Ct. at 2833 (Scalia, J., concurring) ("[T]he exercise of lawmaking power in the United States has traditionally been public."); *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 14 (D.C. Cir. 2009) ("Transparency in government, no less than transparency in choosing our government, remains a vital national interest in a democracy.").  This Court, therefore, agrees with Defendants and finds these to be compelling interests in TOMA's requirement of open meetings.

38.    Additionally, this Court finds that TOMA, as currently structured, is narrowly-tailored under intermediate scrutiny analysis. TOMA only prohibits a quorum of government officials from not disclosing discussions of public matters over which they have jurisdiction.  To be narrowly-tailored under an intermediate scrutiny analysis, TOMA's restrictions must only promote "a substantial governmental interest that would be achieved less effectively without the restriction." *Serv. Emp. Int'l Union, Local 5 v. City of Hous.*, 595 F.3d 588, 596 (5th Cir. 2010).  Members of governmental bodies are protected from prosecution for a violation of TOMA if they act in reasonable reliance on

F:\MD\Chambers\Judge_Junell\JUNELL CLERKS\SBaker\Civil\Alpine v. St of TX, P-09-cv-59\Findings of Fact and Conclusions of Law - FINAL.wpdMarch 25, 2011 (1:17pm)

Page 27 of 37

a court order, attorney general opinion, or the opinion of an attorney for the governmental body. Tex. Gov't Code Ann. § 551.144(c).  This protects the speakers for official conduct that might otherwise fall under TOMA's proscription.  Lastly, TOMA offers numerous exceptions to the requirement that meetings be open so as long as the governmental body gives "written notice of the date, hour, place, and subject" of its closed meetings.  Tex. Gov't Code Ann. § 551.041; Tex. Att'y Gen. Op. JC-0057, 1999 WL 387124, at *5 (May 26, 1999) ("The Open Meetings Act requires a governmental body to give notice of the subject of its meetings.").  For example, closed meetings are allowed when a governmental body seeks legal advice concerning pending litigation or settlement offers. Tex. Gov't Code Ann. § 551.071(1) (Vernon 2004). Also, TOMA does not require governmental bodies to conduct open meetings when deliberating "the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee."  Tex. Gov't Code Ann. § 551.074(a) (Vernon 2004).

39.     Defendants argue that Section 551.144 restricts speech because it punishes public officials for speaking at closed meetings.  But as this Court has previously mentioned, public officials can correct any violation of TOMA and also avoid TOMA's criminal provisions by subsequently holding open meetings. *See, e.g., Burks v. Yarbrough*, 157 S.W.3d 876, 883 (Tex. App. – Houston [14th Dist.] 2005, no pet.).  Thus, TOMA does not restrict speech.  TOMA requires disclosure.  Because TOMA allows for protection of necessary official speech and only burdens private speech minimally, this Court finds that TOMA is narrowly tailored.

**(2). Strict Scrutiny Analysis**

40.     The Fifth Circuit Panel originally concluded that TOMA required strict scrutiny, but, as mentioned previously, that opinion was vacated when a rehearing en banc was granted.  This Court,

therefore, holds in the alternative that if strict scrutiny applies, TOMA meets strict scrutiny.

41.     Content-based restrictions must meet strict scrutiny. *Republican Party of Minn. v. White*, 536 U.S. 765, 774-75 (2002). To pass strict scrutiny, the burden is on the government to show that the regulation serves (1) a compelling state interest and (2) that the regulation is narrowly-tailored. *Id.*; *Serv. Emp. Int'l Union*, 595 F.3d at 596. "A content-based regulation of speech will not satisfy strict scrutiny if there is a less restrictive means that would be at least as effective in achieving the legitimate purpose that is being served." *Serv. Emp. Int'l Union*, 595 F.3d at 596 (quoting *Reno v. ACLU*, 521 U.S. 844, 874 (1997)) (internal quotation marks omitted). "The fact that strict scrutiny applies says nothing about the ultimate validity of any particular law; that determination is the job of the court applying that standard." *Rangra II*, 566 F.3d 515, 526-27 (5th Cir. 2009) (quoting Adam Winkler, Fatal in Theory and Strict in Fact: An Empirical Analysis of Strict Scrutiny in the Federal Courts, 59 Vand. L. Rev. 793, 795-96 (2006)) (internal quotation mark omitted), *vacated by* 576 F.3d 531 (5th Cir. 2009) (granting rehearing en banc), *dismissed appeal as moot*, 584 F.3d 206 (5th Cir. 2009) (en banc).

42.     If TOMA must meet strict scrutiny, this Court has already found that TOMA's open government requirement serves a compelling governmental interest.[9] In addition, this Court also finds that TOMA is narrowly-tailored under strict scrutiny.

43.     Plaintiffs, seeking to prove TOMA is not narrow enough under strict scrutiny, argue that TOMA's criminal provisions are not the least restrictive means because only eleven of the fifty open meetings laws in the United States provide for confinement if there is a violation of the law. This

---

[9]*See* Intermediate Scrutiny Analysis, *supra* Part III.E.(1).

Court finds Plaintiffs' argument unpersuasive. Rather, this Court agrees with Defendants that narrow tailoring does not require uniformity in remedy.

44.     This Court finds that TOMA's criminal provisions are narrowly-tailored under strict scrutiny. In *Burson v. Freeman*, 504 U.S. 191 (1992), the Supreme Court applied strict scrutiny to a Tennessee law prohibiting political speech within one-hundred feet of a polling place because it was content-based. *Burson*, 504 U.S. at 197-98 (plurality opinion). Even though some jurisdictions only prohibited political speech within fifty feet of polling places, the Supreme Court still concluded that the Tennessee law was narrowly-tailored. *Id.* at 210-11 (plurality opinion); *Burson*, 504 U.S. at 218 (Stevens, J., dissenting). The Plurality reasoned that this is a "difference only in degree, not a less restrictive alternative in kind." *Burson*, 504 U.S. at 210 (plurality opinion). Neither the *Burson* plurality nor the dissent addressed the criminal provisions of the Tennessee law in its narrow-tailoring analysis. *Burson*, 504 U.S. at 194, 199-211 (plurality opinion) (the Tennessee statute authorized a maximum confinement of 30 days, a fine up to $50, or both). Similarly, this Court finds it unnecessary to analyze TOMA's § 551.144 confinement penalties in its narrow-tailoring analysis because TOMA does not suppress speech. A regulation is narrowly tailored if it "does not unnecessarily circumscrib[e] necessarily protected expression." *Republican Party of Minn. v. White*, 536 U.S. 765, 775 (2002). TOMA requires disclosure; TOMA does not circumscribe speech. If a majority of government officials discuss public business outside of an open meeting, they must subsequently disclose that information to avoid prosecution. *See, e.g.*, *Burks v. Yarbrough*, 157 S.W.3d 876, 883 (Tex. App. – Houston [14th Dist.] 2005, no pet.). Thus, TOMA does not restrict speech. Government officials are subject to prosecution under TOMA if they hide that speech from their constituents. Finally, TOMA is narrowly-tailored because there is no less restrictive means of

limiting what a quorum of a governmental body can say outside of a meeting.  As previously mentioned, city council members have affirmative defenses to TOMA, and there are several exceptions to the general rule that all meetings be open.[10]

45.     In sum, this Court finds Defendants' interests–that open meetings provide transparency in government's decision-making process, discourage fraud and corruption in government, and foster trust in government – are compelling.  This Court also finds that TOMA's criminal provisions are narrowly-tailored under strict scrutiny because there is no less restrictive means in assuring that Texas government remains open.

**F. Overbreadth**

46.     Plaintiffs also allege that TOMA is overbroad and vague.  In a facial challenge to the unconstitutionality of a statute as overbroad and vague, the first step is the overbreadth analysis.  *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009).  In an overbreadth analysis, a court must:

> determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.

*Clark*, 582 F.3d at 612 (5th Cir. 2009) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982)).

47.     "[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Okla.*, 413 U.S. 601, 615 (1973).  "The constitutional defect of an overbroad restraint on speech lies in the risk that the wide sweep of

---

[10] *See* Intermediate Scrutiny Analysis, *supra* Part III.E.(1).

F:\MD\Chambers\Judge_Junell\JUNELL CLERKS\SBaker\Civil\Alpine v. St of TX, P-09-cv-59\Findings of Fact and Conclusions of Law - FINAL.wpdMarch 25, 2011 (1:17pm)

Page 31 of 37

the restraint may chill protected expression. Conversely, invalidation of a statute on overbreadth grounds brings about total judicial abrogation of even the legitimate regulation at the core of the overbroad statute." *United States v. Wallington*, 889 F.2d 573, 576 (5th Cir. 1989). In order to avoid this latter result, a court should eschew reliance on the overbreadth doctrine "where there are a substantial number of situations to which a statute may validly be applied." *Id.*

48.     At the bench trial, Plaintiffs Jim Ginnings and Mel LeBlanc testified that TOMA suppresses their speech in social settings. This Court concludes that TOMA does not prevent Plaintiffs from speaking to a quorum of their fellow city council members at a social function that is unrelated to any public business conducted by that city council. *See* Tex. Gov't Code Ann. § 551.001(4) (Vernon Supp. 2010). This Court further concludes that TOMA is not violated when Plaintiffs and a quorum of their fellow city council members attend any "regional, state, or national convention or workshop, ceremonial event, or press conference," if no formal action is taken or any discussion of public business by that city council "is incidental to the social function, convention, workshop, ceremonial event, or press conference." *Id.*

49.     This Court, therefore, finds that Plaintiffs have failed to show that TOMA is substantially overbroad. Governmental bodies have no First Amendment right to conduct public business behind closed doors. TOMA does not restrict constitutionally-protected speech. Rather, TOMA merely requires that governmental bodies keep their meetings open to the public. TOMA ensures that governmental bodies perform their duty, which is informing Texas citizens about public affairs. This Court, therefore, finds that TOMA does not restrict or inhibit a substantial amount of activity protected by the First Amendment.

## G. Vagueness

50.     For criminal statutes, the Fifth Circuit uses a two-part void-for-vagueness test: (1) a penal statute must define the criminal offense with sufficient definiteness so that an ordinary person may understand what conduct is actually prohibited; and (2) a penal statute must define a criminal offense in a way that does not encourage discriminatory and arbitrary enforcement.  *United States v. Rudzavice*, 586 F.3d 310, 314-15 (5th Cir. 2009) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)); *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 507 (5th Cir. 2001).  "But perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

51.     A regulation is vague only if the act's effect on legitimate expression is "real and substantial *and* the language of the ordinance is not readily subject to a narrowing construction by the state courts." *J & B Entm't Inc., v. City of Jackson*, 152 F.3d 362, 368 (5th Cir. 1998) (quoting *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1210 (5th Cir. 1982)) (internal quotation marks omitted).  "Real and substantial" for a facial vagueness test has the same meaning as for a facial overbreadth challenge. *J & B Entm't*, 152 F.3d at 368.

52.     The Supreme Court has held that "[f]or the purpose of determining whether a state statute is too vague and indefinite to constitute valid legislation we must take the statute as though it read precisely as the highest court of the State has interpreted it." *Kolender v. Lawson*, 461 U.S. 352, 357 n.4 (1983) (quoting *Wainwright v. Stone*, 414 U.S. 21, 22-23 (1973)) (internal quotations marks omitted).   The Texas Supreme Court has reasoned that "[w]hen a majority of a public decisionmaking body is considering a pending issue, there can be no 'informal' discussion. There

is either formal consideration of a matter in compliance with the Open Meetings Act or an illegal meeting." *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990)

53.     At the bench trial, Plaintiffs Diana Asgeirsson and Henry Wilson testified that TOMA is vague because it is not clear what the Act prohibits.  Plaintiffs assert they can be charged with a violation of TOMA when they meet as a quorum or when they meet one-on-one with their constituents or fellow city council members.  Thus, Plaintiffs do not communicate with their fellow city council members and their constituents one-on-one outside of open meetings to avoid "walking quorums."  As previously discussed, TOMA is violated under § 551.144 when a quorum of a governmental body does not conduct its meetings openly. Under § 551.143, TOMA is violated when a governmental body "knowingly conspires to circumvent" the Act's requirements by meeting in secret to deliberate in numbers less than a quorum.  Tex. Gov't Code Ann. § 551.143.  In essence, the Plaintiffs' concerns are moot because  "[a] meeting of less than a quorum is not a 'meeting' within the Act when there is no intent to avoid the Act's requirements." *Esperanza Peace & Justice Ctr. v. City of San Antonio*, 316 F. Supp. 2d 433, 473 (W.D. Tex. 2001); *see West v. Brazos River Harbor Navigation Dist.*, 836 F. Supp. 1331, 1337-38 (S.D. Tex. 1993) ("[TOMA] is not violated when members confer ex parte and one-on-one.").  Plaintiffs Asgeirsson and Wilson did not testify that they are attempting to avoid TOMA's requirements by meeting in numbers of less than a quorum with their fellow city council members or constituents. This Court, therefore, disagrees with Plaintiffs and finds that the meanings of §§ 551.143-.144 are plain.

54.     Serial meetings, or walking quorums, occur when "members of a governmental body [. . .] gather in numbers that do not physically constitute a quorum at any one time but who, through successive gatherings, secretly discuss a public matter with a quorum of that body." Tex. Att'y Gen.

Op. GA-0326, 2005 WL 1190504, at *2 (May 18, 2005) (construing Tex. Gov't Code Ann. § 551.143). Thus, TOMA is violated when "a quorum or more of a body [. . .] attempts to avoid [TOMA's] purposes by deliberately meeting in numbers physically less than a quorum in closed sessions to discuss public business and then ratifying its actions in a physical gathering of the quorum in a subsequent sham public meeting." *Id.* at *3 (citing *Esperanza*, 316 F. Supp. 2d at 473. TOMA is not violated when a member of a governmental body uses the telephone to discuss an agenda for future meetings with another member, so long as a quorum is not present and the telephone conversation is not used to circumvent the Act. *Harris Cnty. Emergency Serv. Dist. No. 1 v. Harris Cnty. Emergency Corps*, 999 S.W.2d 163, 168-69 (Tex. App. – Houston [14 Dist.] 1999, no pet.). So, unless Plaintiffs Asgeirsson and Wilson "knowingly conspire [. . .] to circumvent" TOMA, they do not violate TOMA when they communicate with their fellow city council members or constituents ex parte or one-on-one by phone or e-mail about public business outside of a quorum. Tex. Gov't Code Ann. § 551.143(a) (Vernon 2004).  TOMA is not impermissibly vague in all of its applications, rather, TOMA "sets forth a core of prohibited conduct with sufficient definiteness to guide those who must interpret it." *See J & B Entertainment, Inc. v. City of Jackson, Miss.*, 152 F.3d 362, 369 (5th Cir. 1998).

## IV. CONCLUSION

1.      Determining whether a regulation "is content based or content neutral is not always a simple task." *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994). "If the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizens, for simply engaging in political speech." *Citizens United v. FEC*, 130 S. Ct. 876, 904 (2010); *see Brandenberg v. Ohio*, 395 U.S. 444, 445 (1969) (per curiam). This Court, however,

finds that TOMA does not provide a fine or confinement for speaking; TOMA does not prohibit "a

substantial amount of protected speech." *Hersh v. United States ex. rel. Mukasey*, 553 F.3d 743, 762

(5th Cir. 2008). Instead, TOMA punishes members of governmental bodies when those members

hide that speech from Texas citizens in closed meetings. TOMA neither suppresses the speakers'

viewpoint nor the content of his or her speech. Rather, TOMA protects the compelling interest of

government transparency. Because there is "no realistic possibility that official suppression [or

disapproval] of ideas is afoot," this Court finds that TOMA is a content-neutral law. *See R.A.V. v.*

*City of St. Paul, Minn.*, 505 U.S. 377, 390 (1992).

2.     TOMA is not unconstitutionally overbroad.

3.     TOMA is not unconstitutionally vague.

4.     TOMA is a content-neutral law because it is not viewpoint based, it does not prevent

certain ideas from reaching the marketplace of ideas, it is justified by a permissible content-neutral

purpose, and it requires disclosure, not suppression, of speech.

5.     TOMA meets intermediate scrutiny.

6.     In the alternative, if TOMA is found to be content-based, this Court also concludes

that TOMA meets strict scrutiny.

     Accordingly, based upon the foregoing Findings of Fact and Conclusions of Law,

     **IT IS ORDERED** that Plaintiffs' request for declaratory judgment and injunction are

**DENIED**.

     **IT IS FURTHER ORDERED** that all relief not specifically granted herein is expressly

denied.

     **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 24) and

Defendants' Motion for Summary Judgment (Doc. 25) are denied.  The Court, for the reasons

mentioned, finds that neither party's legal analysis adequately frames the case to allow disposal at

the summary judgment phase.  The Court instead, after bench trial, issues these Findings of Fact and

Conclusions of Law.

      **IT IS FURTHER ORDERED** that all other pending motions are denied as moot.

      **IT IS FURTHER ORDERED** that Defendants shall recover their costs of court from

Plaintiffs.

      **IT IS FINALLY ORDERED** that this is a final judgment that disposes of all claims.

      **SIGNED** on this _____25_____ day of **MARCH, 2011.**

                                       **ROBERT JUNELL**
                                       United States District Judge
                                       Western District of Texas